# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20689-CIV-LENARD/ELFENBEIN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

SOPHIA SARINO MANUEL,

      Defendant.

_____/

## ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS (D.E. 19) AND GRANTING JUDGMENT ON COUNTS I-V OF THE COMPLAINT (D.E. 1)

THIS CAUSE is before the Court on the United States of America's ("Plaintiff") Motion for Judgment on the Pleadings (D.E. 19) ("Motion"), filed on July 3, 2024. The Plaintiff seeks judgment on the pleadings on its Complaint to Revoke Naturalization (D.E. 1) ("Complaint") the Answer (D.E. 11) ("Answer") filed by Sophia Sarino Manuel ("Defendant"). The Defendant, acting *pro se*, filed a Response (D.E. 22) ("Response") to the Motion on July 17, 2024. The Plaintiff filed a Reply (D.E. 26) ("Reply") on July 24, 2024. This matter is now ripe for adjudication. The Court, having considered the Complaint, the Answer, the Motion, the Response, the Reply, the docket, and otherwise being fully advised in the premises, finds as follows.

## I.    Background

Plaintiff filed its Complaint on February 22, 2024, seeking the revocation of Defendant's naturalization. For factual bases, the Plaintiff refers to the Defendant's

criminal convictions for Forced Labor Conspiracy under 18 U.S.C. § 371 and § 1589(a)(3) and (4), and False Written Statements in violation of 18 U.S.C. § 1001(a)(3). D.E. 1 at 1-3. After being charged, the Defendant entered into a plea bargain and signed a stipulation of facts (D.E. 1-3) (together the "Plea Agreement") admitting to the conspiracy and false statement charges. D.E. 1-3 at 6-9. The Plaintiff alleges that these facts constitute clear, unequivocal, and convincing reasons to revoke the Defendant's citizenship because the Defendant, on account of her crimes, illegally procured her naturalization. *See* D.E. 1. The Plaintiff thus alleges the following counts: (I) Illegal procurement of naturalization due to lack of good moral character due to the commission of a **crime of moral turpitude**; (II) Illegal procurement of naturalization due to lack of good moral character reflected by the commission of an **unlawful act** (**Forced Labor Conspiracy**); (III) Illegal procurement of naturalization due to lack of good moral character reflected by the commission of an **unlawful act** (**False Written Statements**); (IV) Illegal procurement of naturalization due to lack of good moral character due to making **false testimony**; and (V) Procurement of U.S. citizenship by **concealment of a material fact or willful misrepresentation**. D.E. 1 at 12-18.

Defendant filed her Answer on May 17, 2024, admitting to some of the facts presented by the Complaint, denying some facts, and claiming to be without knowledge regarding others.[1] *See* D.E. 11.

---

[1] For the sake of brevity, the Court will not list each of the Defendant's averments.

2

In its Motion, the Plaintiff claims the facts it presented in its Complaint and the attached documents are indisputable, and thus judgment on the pleadings is warranted. D.E. 19 at 1. The Plaintiff argues it has shown by clear, unequivocal, and convincing evidence contained within the Complaint and attached documents that the Defendant illegally procured her naturalization as detailed in Counts I-V. D.E. *Id* at 2. The Plaintiff further argues that the Defendant is now collaterally estopped from denying the facts established by her criminal convictions for her role in the Forced Labor Conspiracy and for making False Written Statements. *Id* at 9-10. Thus, the Plaintiff requests the Court grant judgment on Counts I-V and find that the Defendant illegally procured her naturalization.

In her Response, the Defendant maintains that she did not commit any crimes prior to her naturalization interview and that as such, she did not procure her naturalization through illegal means. D.E. 22 at 1. The Defendant claims that the Plea Agreement she signed, in which she admitted to partaking in the Forced Labor Conspiracy and making False Written Statements, was the result of coercion and duress. *Id* at 1-2. The Defendant further argues that the plea agreement is not an admission of her guilt. *Id* at 2. Last, the Defendant appears to argue that the occasional lack of specific dates for the crimes detailed in the Plea Agreement vitiates the document's probative value. *Id*.

The Plaintiff, in its Reply, reiterates its arguments and explains that the Defendant's crimes did occur during the statutory period in which good behavior was required for the procurement of naturalization. D.E. 26 at 3-5. *See* 8 U.S.C. § 1427(a). The Plaintiff further

argues that the Plea Agreement was entered into freely, and as such the Defendant is collaterally estopped from denying the admissions contained therein. D.E. 26 at 6-7.

## II.    Applicable Law and Legal Standard

A party may move for judgment on the pleadings "[a]fter the pleadings are closed- but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). Additionally, "[j]udgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Medicomp, Inc. v. United Healthcare Ins. Co.*, 562 F. App'x 754, 756 (11th Cir. 2014). Thus, if there are no genuine disputes as to the facts of the complaint, it is proper for the Court to entertain the Plaintiff's Motion. In assessing facts presented by the Complaint the Court "accepts all of the allegations in the complaint as true and construes them in the light most favorable to the nonmoving party." *Id*.

Under federal law as construed by the Eleventh Circuit "collateral estoppel bars relitigation of an issue previously decided if the party against whom the prior decision is asserted had 'a full and fair opportunity' to litigate the issue in an earlier case." *In re Gosman*, 382 B.R. 826, 839 (S.D. Fla. 2007). The Eleventh Circuit has affirmed the application of the doctrine of collateral estoppel to denaturalization cases, based on an earlier criminal conviction. *United States v. Jean-Baptiste*, 395 F.3d 1190, 1194-1195 (11th Cir. 2005). The operation of collateral estoppel requires that "the issue in question must be 'identical in both the prior and current action,' the issue must have been 'actually litigated' in the criminal trial, the determination of the issue must have been 'critical and necessary

to the judgment in the prior action' and the burden of persuasion in the subsequent action cannot be 'significantly heavier.' *Id* at 1195.

The Supreme Court has determined that naturalization applicants must strictly comply with federal statutory provisions necessary to "safeguard the integrity of this 'priceless treasure.'" *Fedorenko v. United States*, 449 U.S. 490, 507 (1981). Thus, no applicant may receive citizenship without adherence to the statutory conditions prerequisite to the obtainment of naturalization.

In order to procure naturalization, an applicant must maintain the requisite good moral character during the statutory period of the five years preceding the date of filing the application for naturalization, until the time of the admission to citizenship. 8 U.S.C. § 1427(a). An applicant shall be found to lack good moral character if during the statutory period, they committed a crime involving moral turpitude. 8 C.F.R. § 316.10(b)(2)(i). Further, unless an applicant can establish extenuating circumstances, the commission of an unlawful act that adversely reflects on said applicant's moral character will bar the applicant from citizenship for lack of good moral character. 8 C.F.R. § 316.10(b)(3)(iii).

If an applicant procures their naturalization illegally, or through concealment of a material fact or willful misrepresentation, that applicant shall have their naturalization revoked. 8 U.S.C. § 1451(a). The Supreme Court has recognized "that the right to acquire American citizenship is a precious one and that once citizenship has been acquired, its loss can have severe and unsettling consequences." *Fedorenko,* 449 U.S. at 505. As such, the Plaintiff must demonstrate by clear, unequivocal, and convincing evidence that the

revocation is justified. *Fedorenko*, 449 U.S. at 505. Where the government has met this standard of proof to demonstrate that a naturalized citizen procured their naturalization illegally or by concealment of a material fact or willful misrepresentation, a district court *must* revoke the naturalization. *Jean-Baptiste*, 395 F.3d at 1192.

## III.   Discussion

### a.   Judgment on the Pleadings is Proper

The Court begins its analysis by determining whether Judgement on the Pleadings is appropriate. A party may move for judgment on the pleadings after the close of pleadings but early enough to not delay trial. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate where there is no dispute of material facts in the pleadings. *Medicomp*, 562 F. App'x at 756. Pleadings are closed, and the trial is set to begin October 20, 2025. The issue of timing settled, the Court turns to whether there is a dispute of material facts in the pleadings.

In the present case, the Defendant denies a number of the claims which the Plaintiff alleges in its Complaint, specifically facts pertaining to her culpability for the Forced Labor Conspiracy and False Written Statements convictions. *See* D.E. 11. In her Response to the Motion, the Defendant contends that she did not commit any crimes during the statutory period and challenges the validity of the Plea Agreement. D.E. 22 at 1-2. In contrast, the Plaintiff argues that the Defendant's is collaterally estopped from denying her criminal conviction and the facts stipulated within the Plea Agreement. D.E. 26 at 6-7. All the Plaintiff's material factual assertions that are disputed by the Defendant relate to the

6

Defendant's previous criminal conviction. *See generally* D.E. 11. As such, whether the defendant is collaterally estopped from denying the facts stipulated within the Plea Agreement will determine whether there is a dispute of material facts in the pleadings.[2]

Collateral estoppel precludes the relitigation of a matter where a party had a "full and fair" opportunity to litigate the matter in an earlier case. *In re Gosman*, 382 B.R. at 839. Collateral estoppel applies in denaturalization cases where a party was previously convicted of a crime. *Jean-Baptiste*, 395 F.3d at 1194-1195 The operation of collateral estoppel in a denaturalization case requires four factors be met: (1) The issue in question must be identical in both the prior and current action; (2) the issue must have been actually litigated in the criminal trial; (3) the determination of the issue must have been critical and necessary to the judgment in the prior action; and (4) the burden of persuasion in the subsequent action cannot be significantly heavier. *Id* at 1195.

In the criminal case, the Defendant was convicted for her role in the Forced Labor Conspiracy and for making False Written Statements. In the present case, the Plaintiff argues that the Defendant was ineligible for naturalization because of the crimes for which

---

[2] The Defendant, in her Response, claims that the Plea Agreement was the result of coercion, and that she signed the Plea Agreement only due to the government threatening her immigration [sic] status. D.E. 22 at 2. The Court does not find this argument persuasive. In addition to the Defendant providing no evidence of undue coercion by the Government, the Plea Agreement plainly stated that the "Defendant recognizes that pleading guilty may have consequences with respect to the defendant's status as a naturalized citizen of the United States." D.E. 1-3 at 4. The Defendant states that the agreement "should not be conflated with an admission of guilt." D.E. 22 at 2. However, the stipulation of facts contained within the Plea Agreement, signed by the Defendant, plainly constitute an admission of guilt. Finally, the Defendant challenges the plea agreement on the grounds that it does not specify the dates of her crimes. *Id*. However, the dates provided in the stipulation of facts attached to the plea agreement, are specific enough to determine whether the Defendant committing her crimes during the statutory period in which she was required to maintain good moral character.

she was previously convicted. The factual bases for Counts I-V are derived from these crimes, and thus this factor is met.

The Court now considers whether the issue was actually litigated in a criminal action. The Defendant pled guilty to the Forced Labor Conspiracy and False Written Statements charges and thus avoided a trial. The Defendant does not argue the avoidance of a trial by accepting a plea bargain would mean that the issue was not "actually litigated," however, the Court will nevertheless briefly discuss this factor. The Eleventh has held that an applicant who pleads guilty to a criminal charge is collaterally estopped from denying the criminal charge or the facts thereof at a later denaturalization proceeding. *United States v. Gkanios*, 536 Fed.Appx. 854, 857 (11th Cir. 2013). Accordingly, the fact that the Defendant pleaded guilty and was convicted on the charges of Forced Labor Conspiracy and making False Written Statements is sufficient to satisfy this factor.

Next, the Court considers the centrality of the commission of the criminal offense to the conviction. Put simply, the Defendant would not have been convicted had she not taken part in the Forced Labor Conspiracy or made False Written Statements. As the Plaintiff's Complaint rests on the Defendant's previous convictions, this factor is satisfied.

Finally, in the present case, the standard of proof which the Plaintiff must meet to justify the revocation of naturalization is clear, unequivocal, and convincing evidence. *Fedorenko,* 449 U.S. at 505. While this is an undeniably high standard that befits the seriousness of the potential outcome of a denaturalization case, this standard of proof is

lower than in the Defendant's criminal convictions, which were proven "beyond a reasonable doubt." *Jean-Baptiste*, 395 F.3d at 1195. Thus, this factor is met.

Because the four factors expounded by the Eleventh Circuit in *Baptiste* are met, the Defendant is collaterally estopped from denying her earlier criminal convictions in the present denaturalization case. As the factual bases for Counts I-IV comprise entirely of the Defendant's criminal convictions, there exists no dispute of material fact. Thus, judgment on the pleadings is proper.

   b. Defendant's Actions Prior to her Naturalization

As previously stated, applicants for naturalization are required to maintain good moral character for the five years preceding the filing of the naturalization application, and the time from the filing of the application until the applicant is naturalized. 8 U.S.C. § 1427(a). The Defendant filed her N-400 Application for Naturalization on September 12, 2006, and was granted citizenship on August 3, 2007. D.E. 1-1 at 8-9. Thus, the Defendant was statutorily required to maintain good moral character from September 12, 2001, through August 3, 2007.

The Plaintiff charges in Counts I-IV that the Defendant committed various acts which reflected adversely on her moral character during the statutory period. D.E. 1 at 12-17. The Court now determines whether the crimes for which the Defendant was found guilty took place during the statutory period.

In the Plea Agreement, the Defendant stipulated that in July 2006, she "held a recruitment meeting in the Philippines to bring Filipino nationals to the United States and collected a $1,500 job security deposit from each of the approximately 36 Filipino nationals which was never returned nor were the promised jobs arranged." D.E. 1-3 at 7. Under federal law, a person is guilty of conspiracy "[i]f two or more persons commit any offense against the United States…and one or more such persons do any act to effect the object of the conspiracy[.]" 18 U.S.C. § 371. The Defendant pled guilty and was convicted of Forced Labor Conspiracy on this basis. Since the Defendant took an overt action in furtherance of the Forced Labor Conspiracy between September 12, 2001, and August 3, 2007, the Court finds that the Defendant committed Forced Labor Conspiracy during the statutory period in which she was required to maintain good moral character.

The Defendant, as part of her Plea Agreement, stipulated that between March 16, 2007, through August 2007 she had, in writing, "falsely represented to the U.S. Department of Labor Employment and Training Administration…that she had 50 full-time country club server positions available[.]" D.E. 1-3 at 7. For this, the Defendant pled guilty and was convicted of making False Written Statements. Since the Defendant made these false written representations to the Government between September 12, 2001, and August 3, 2007, the Court finds that the Defendant committed the offense of making False Written Statements during the statutory period in which she was required to maintain good moral character.

Finally, during her naturalization interview on April 11, 2007, the Defendant testified under oath that she had never committed a crime for which she had not been arrested. D.E. 1-1 at 9. The Defendant admitted in the Plea Agreement that she had both taken an overt act in furtherance of the Forced Labor Conspiracy and made False Written Statements prior to that point, this testimony was false.[3] As the Defendant swore under oath that she had not committed a crime for which she had not been arrested, and admitted later in the Plea Agreement to committing several crimes for which she had not been arrested, the Defendant gave false testimony. Since the Defendant gave this testimony during her naturalization interview on April 11, 2007, between September 12, 2001, and August 3, 2007, the Court finds that the Defendant gave false testimony during the period in which she was statutorily required to maintain good behavior.

c.  Counts I-V

The Court now considers whether the Plaintiff has met its burden of proving Counts I-V. Counts I-V factually rely on the Defendant's criminal convictions for making False Written Statements and for her role in the Forced Labor Conspiracy. The Defendant is collaterally estopped from denying these convictions. Thus, the Court moves on to a legal analysis of the claims. If the Plaintiff proves, by clear, unequivocal, and convincing evidence, that the Defendant procured her naturalization by illegal means, or by willful

---

[3] The Defendant does not dispute that she made this testimony. Rather, she disputes that this testimony was false. D.E. 11 at 3. Whether a person gave testimony is a factual matter. Whether that testimony was false, specifically with regards to whether a person's claim of not having committed a crime, is a legal determination. As such, this averment of the Defendant is a legal, rather than factual, dispute.

misrepresentation or concealed material fact, then this Court is obligated to enter a judgment of denaturalization. *Fedorenko*, 449 U.S. at 517.

      1. <u>Count I</u>

In Count I, the Plaintiff charges that the Defendant illegally procured her naturalization due to her lack of good moral character. Count I alleges that the Defendant committed a crime involving moral turpitude ("CIMT"), referring to the Defendant's conviction for making False Written Statements, during the statutory period when the Defendant was required to maintain good moral character. D.E. 1 at 12-13. Making False Written Statements in any matter within the jurisdiction of the federal government is illegal under 18 U.S.C. § 1001(a)(3). The question before the Court, as it pertains to Count I, is whether the Defendant's violations of § 1001(a)(3) constituted a CIMT.

Applicants for naturalization are required to maintain good moral character in the five years leading up to the filing of the application for naturalization **and** from the date of the application until the date of naturalization. 8 U.S.C. § 1427(a). An applicant for naturalization shall not be found to have good moral character if they commit a CIMT during the statutory period of § 1427(a). 8 U.S.C. § 1101(f)(3); 8 U.S.C. § 1182(a)(2)(A)(i)(I). The False Written Statements made by the Defendant were made from March 2007 to August 2007 (*see* D.E. 1-3 at 7), after the Defendant filed her application for naturalization but prior to the Defendant's naturalization in August 2007. Thus, the False Written Statements made for which the Defendant was convicted transpired during

the statutory period in which the Defendant was required to maintain good moral character. The Court turns to whether the False Written Statements constituted a CIMT.

There is no statutory definition for a CIMT. *Zarate v. U.S. Attorney General*, 26 F.4th 1196, 1999 (11th Cir 2022). However, the Supreme Court has held that "[w]hatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude." *Jordan v. De George*, 341 U.S. 223, 232, (1951). This definition would broadly suggest that the Defendant's False Written Statements would constitute a CIMT.

This conclusion is supported by the Eleventh Circuit, which has held that "[g]enerally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude." *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002). In *Itani*, the Eleventh further held that for such a crime to be one of moral turpitude was dependent on the inherent nature of the offense as defined by the relevant statute, rather than the circumstances of the offense.[4] *Id* at 1215-1216. Thus, the Court considers the nature of the offense as determined by the statute. Section 1001(a)(3) prohibits knowingly and willingly making False Written Statements to the federal government. 18 U.S.C. § 1001(a)(3). This

---

[4] Assuming, *arguendo*, that the determination that a crime involves "depravity or fraud" was dependent on the circumstances of the crime, the Defendant's actions would weigh heavily in favor of denaturalization. The False Written Statements made by the Defendant were part of a scheme to deceive the United States Department of Labor Employment and Training Administration in furtherance of the Defendant's Forced Labor Conspiracy. D.E. 1-3 at 7. The circumstances of the Defendant's offense clearly involve moral turpitude.

offense inherently involves not only a dishonest action but the conscious intention to deceive. Moreover, the Eleventh has held that making a false statement in violation of the law is generally a CIMT.[5] *See Aladesanmi v. United States Attorney General*, 542 Fed. Appx. 838 (11th Cir. 2013). Though the Defendant's False Written Statements were material to her naturalization, the court in *Aladesanmi* has held that a false statement need not be material to constitute a CIMT. *Id* at 841. The Court, having considered the Defendant's conviction, relevant statutes, and the jurisprudence of this Circuit, finds that the Defendant committed a crime involving moral turpitude during the period in which she was statutorily required to maintain good moral character. The Court, having considered the filings of the parties, and the relevant statutes and jurisprudence, finds that that the Defendant knowingly and willfully committed a crime involving moral turpitude.

2.  Count II

The Court turns to Count II, in which the Plaintiff alleges that the Defendant illegally procured her naturalization by her commission of an unlawful act that adversely reflects upon good moral character, referring to the Defendant's commission of Forced Labor Conspiracy in violation of 18 U.S.C. § 371 and § 1589(a)(3) and (4). D.E. 1 at 13-15. An applicant shall be found to not have the requisite good moral character to procure

---

[5] The Plaintiff also cites the Sixth Circuit case of *Fayzullina v. Holder*, 595 Fed. Appx. 608 (6th Cir. 2015) in support of the proposition that a conviction on a federal offense of knowingly and deliberately making False Written Statements in violation of § 1001 is categorically a conviction of a crime involving moral turpitude. *Fayzullina* at 613. The Court finds this case persuasive and harmonious with Eleventh Circuit jurisprudence, specifically *Aladesanni*.

naturalization if they commit a crime during the statutory period and cannot establish extenuating circumstances. 8 C.F.R. § 316.10(b)(3)(iii).

By the Defendant's admission in the Plea Agreement, the Forced Labor Conspiracy took place between 2006 and 2008, during the time when the Defendant was statutorily required to maintain good moral character. D.E. 1-3 at 6-9. According to the Plea Agreement, the Defendant traveled to the Philippines in July 2006 to recruit nationals of that country to work as servers in country clubs and hotels in Florida, and solicited a job security deposit from those that accepted her offer.[6] *Id* at 6-7. However, the Defendant had not secured the promised positions for these individuals and did not return their deposits. *Id* at 7.

A person commits conspiracy in violation § 371 when "one or more…persons do any act to effect the object of the conspiracy." 18 U.S.C. § 371. Because the Defendant planned to deceive the United States government as part of the Forced Labor Conspiracy and took an overt act in furtherance of that conspiracy by recruiting individuals for positions without any intention of following through, the Defendant committed conspiracy no later than July 2006.

Obviously, the commission of Forced Labor Conspiracy reflects adversely on the Defendant's character. *See United States v. Chang*, 633 F. App'x 601, 603 (5th Cir. 2016). The Defendant does not provide any extenuating circumstances for her actions. *See* D.E.

---

[6] The Defendant contends in her Response that this was simply a trip to her home country. D.E. 22 at 1. However, as stated earlier, the Defendant is estopped from denying her criminal convictions and the contents of the Plea Agreement.

22. Thus, the Defendant committed an unlawful act during the statutory period, which adversely reflects on her moral character, and cannot establish extenuating circumstances, and thus procured her naturalization illegally.

### 3. Count III

In Count III, the Plaintiff alleges that the Defendant illegally procured her naturalization by committing a crime that reflected adversely on her moral character, on account of having made False Written Statements in violation of 18 U.S.C. § 1001(a)(3). D.E. 1 at 15. The Eleventh Circuit has held that generally "crimes involving dishonesty, false statement, or fraud reflect adversely on moral character." *United States v. Dor*, 729 F. App'x 793, 798 (11th Cir. 2018). As previously stated, the Court disregards the Defendant's erroneous assertion that the False Written Statements occurred outside of the statutory period requiring good moral character. The Defendant made these false statements during the period in which she was required to maintain good moral character and does not attempt to offer extenuating evidence. These False Written Statements rendered the Defendant ineligible for naturalization, and accordingly, the Court concludes that the Defendant illegally procured her naturalization.

### 4. Count IV

In Count IV, the Plaintiff alleges that the Defendant lacked the requisite good moral character, on account of having made false testimony during her naturalization interview, thus illegally procuring her naturalization. D.E. 1 at 16-17. A person who, during the statutory period, makes false testimony for the purposes of obtaining an immigration

benefit shall be found to lack the requisite good moral character to obtain naturalization. 8 U.S.C. § 1101(f)(6). In the Plea Agreement, the Defendant admitted to taking an overt act to further her Forced Labor Conspiracy in July 2006. D.E. 1-3 at 7. On April 11, 2007, in her naturalization interview, the Defendant testified under oath that she had not committed a crime for which she had not been arrested. D.E. 1-1 at 8-9. The Defendant does not attempt to assert any extenuating circumstances. As such, the Court finds that the Defendant lacked the requisite good moral character on account of making false testimony and that the Defendant illegally procured her naturalization.

> 5.   Count V

Last, the Court considers Count V, in which the Plaintiff alleges that the Defendant illegally procured her naturalization by concealment of a material fact or willful misrepresentation. D.E. 1 at 17. If a naturalization applicant acquires citizenship by concealing a material fact or willful misrepresentation, revocation of citizenship is not only justified, but required. *Jean-Baptiste*, 395 F.3d at 1192. The Supreme Court has stated that § 1451(a) contains four elements: (1) the naturalized citizen must have misrepresented or concealed some fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988).

First, the Defendant cannot deny that she concealed or misrepresented a fact. As expounded earlier in this Order, the Defendant is collaterally estopped from denying that

she took an overt act in furtherance of the Forced Labor Conspiracy in July 2006. This is a crime for which she had not been arrested. When asked at her naturalization interview in April 2007 whether she had committed a crime for which she had not been arrested she replied in the negative. D.E. 1-1 at 8-9.

Second, the concealment and misrepresentation were willful. The Defendant took a step in furtherance of the Forced Labor Conspiracy and later concealed and misrepresented that fact at her naturalization interview. The Defendant contends that the only action she took prior to the naturalization interview was "to fly to her home county.[7]" D.E. 22 at 1. However, this account omits key details. *By her own admission*, while the Defendant was in the Philippines, she held a recruitment meeting in which she represented to Filipino nationals that she would be able to secure for them jobs in the United States, and solicited a security deposit from these individuals to achieve this purpose. *See* D.E. 1-3. The Defendant had not secured jobs for the Filipino nationals, had no apparent intention of securing any such jobs, and would later make False Written Statements to the Government to further this deception. *Id.*

Third, the fact that was concealed and misrepresented was material. Regarding naturalization, a fact "is material if it 'has a natural tendency to influence, or was capable of influencing, the decision of' the decision-making body to which it was addressed."

---

[7] The Defendant effectively claims ignorance of having given false testimony. While it is a legal fiction that any one person knows every law, Anglo-American Common Law has long held that *ignorantia juris non excusat.* Black's Law Dictionary 1969-1970 (12th ed. 2024). The fact remains that the Defendant committed a crime and later swore under oath that she had not.

*Kungys*, 485 U.S. at 771-772. Whether an applicant has committed a crime is among the questions that applicants for citizenship are asked in their naturalization interview, and the answer is undoubtedly material to a determination of whether said applicant qualifies for citizenship. See *U.S. v. Campos*, 2016 WL 8678885 (S.D. Fla. Nov. 3, 2016) (Lenard, J.). As discussed throughout this order, various crimes including those which the Defendant has been convicted of, reflect adversely on an applicant's moral character and may preclude an applicant from obtaining naturalization.[8]

Last, the Defendant procured her citizenship as a result of her misrepresentation and concealment of facts. As stated in the above paragraph, had the Defendant's crime been known to the Government, it would have precluded her from procuring naturalization. The Court finds that each of the four *Kungys* factors is satisfied and that the Defendant procured her naturalization by concealment of material fact and willful misrepresentation.

## IV. Conclusion

As the Plaintiff has demonstrated that judgment on the pleadings is proper, and has proven Counts I-V by clear, unequivocal, and convincing evidence, the Court **ORDERS**:

(1) The Plaintiff's Motion for Judgment on the Pleadings (D.E. 19) is **GRANTED**;

(2) The Government shall have ten (10) days from the date of this Order to file a proposed final judgment revoking the Defendant's citizenship;

---

[8] As stated earlier, the Defendant's claim that her misrepresentations were not material is unpersuasive. Her argument is predicated on the erroneous assertion that she had not committed the crime of Forced Labor Conspiracy prior to her naturalization interview.

(3) This matter is now **CLOSED**.

**SO ORDERED** in Chambers at Miami, Florida this 19th day of November, 2024.


**JOAN A. LENARD**

**UNITED STATES DISTRICT JUDGE**